FILED
U.S. DISTRICT COURT
2006 SEP -6 A 10: 21
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

# In the United States District Court
## for the District of Utah, Central Division

| | |
|---|---|
| NORTHERN UTAH HEALTHCARE CORP. dba ST. MARK'S HOSPITAL, | |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| BC LIFE & HEALTH INSURANCE COMPANY, | Case No. 2:06 cv 077 JTG |
| Defendant. | |

This matter comes before the Court on plaintiff's Motion for Remand to State Court. The parties have submitted memoranda, supplemental memoranda, and oral argument has been heard. The parties submitted the matter for decision and the motion was taken under advisement.

The Court has reviewed the entire record, and after due consideration, Plaintiff's Motion for Remand is GRANTED.

### PROCEDURAL HISTORY

Northern Utah Healthcare ("Northern") filed a Complaint in the Third District Court for the State of Utah against BC Life and Health Insurance Company ("BC") listing three causes of action: (1) breach of contract; (2) promissory estoppel; and (3) negligent misrepresentation. BC filed a timely Notice of Removal, removing the case from the State of Utah to the United States District Court for the District of Utah. BC initiated removal based on

its contention that the federal courts had original jurisdiction of the enumerated claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). 29 U.S.C. §§ 1001 et. seq.

Northern filed a timely Motion for Remand and Memorandum in Support. Northern argues that BC's removal, based on federal question jurisdiction under ERISA, is defective because BC's claims raise no issues of federal law and are not subject to ERISA preemption. BC then filed a Memorandum in Opposition to the Motion to Remand and Northern filed a Reply. Thereafter, the Court set the Motion to Remand for oral argument. The motion was fully argued, the parties submitted the matter for decision, and the Motion for Remand was taken under advisement.

### FACTUAL HISTORY

In 2004, Jason McBride ("McBride") was employed at Wal Mart and was eligible to receive benefits under the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Plan"). During the Spring of that year, McBride was experiencing serious medical problems and went to St. Mark's Hospital to arrange for medical treatment. On and after June 15, 2004, several St. Mark's representatives called BC to inquire whether McBride was eligibile for benefits under the Plan. In response, a BC customer service representative told the St. Marks representative that McBride was eligible for benefits under the Plan, but that the Plan provided a first year maximum coverage benefit of $25,000. On June 25, 2004, Dr. J. Kent Thorne's office called BC to request authorization to perform an elective surgery for McBride intended to treat an Aortic Valve disorder. BC approved the surgery under their Plan, and surgery was then

2

scheduled for August 6th-10th, 2004. Subsequent phone calls were made by St. Mark's representatives to BC to confirm that the surgery and related expenses would be covered by the Plan.

St. Mark's contends that the aforementioned phone calls led them to believe that all qualifying expenses would be paid because McBride's out-of-pocket and deductible obligations were believed to have been met. However, under McBride's insurance coverage he was entitled to qualifying expenses up to 100% "of the Plan's maximum benefit," which was $25,000. St. Mark's final call to BC was made on August 5, 2004, at which time St. Mark's alleges that it was again assured by BC that the Plan would cover all costs of treatment.

The elective surgery was received by McBride as scheduled, after which St. Mark's submitted three claims for benefits to BC and BC paid $3,789.97 on the first claim and $10,232.45 on the second claim. However, St. Mark's third claim of $43,369.49 was not paid because McBride's benefit cap had been exceeded at that point. After BC refused to pay the final $43,369.49, Northern dba St. Mark's, brought suit in State Court.

## I. ERISA'S PREEMPTIVE PROVISION DOES NOT REACH THIRD-PARTY HEALTH CARE PROVIDERS.

The essential issue to be decided in Northern's Motion to Remand is whether its claims 'relate to' an employee benefit plan under ERISA. If the claims do 'relate to' an employee benefit plan, ERISA preemption would defeat the Motion to Remand. If the claims do not so 'relate to,' the Motion to Remand should be granted.

The Supreme Court has enunciated the rule as follows: "ERISA shall supersede any and all State laws <u>insofar as they relate to any employee benefit plan covered by the statute,</u>

3

29 U.S.C. § 1144(a)." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650, 115 S.Ct. 1671, 1674 (quotations and citation omitted) (emphasis added). In *Shaw v. Delta Air Lines, Inc.*, the Supreme Court recognized a narrow exception to ERISA preemption:

> Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan.

463 U.S. 85, 100 (1983).

In order to warrant a finding that an employee benefit plan does not 'relate to' ERISA, courts have ruled that ERISA's broad preemptive scope does not reach independent claims based on state-common law. In this regard, the Fifth, Ninth and Eleventh Circuits permit third-party health care providers to bring such independent claims: *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994); *Cypress Fairbanks Medical Center, Inc. v. Pan-American Life Ins.* Co., 110 F.3d 280, 283 (5th Cir. 1997); *Meadows v. Employers Health Insurance*, 47 F.3d 1006, 1008 (Ninth Cir. 1995). These courts have determined that a third-party health care provider, who relies to its detriment on the misrepresentations of an insurer, is an outside party to an ERISA plan.

The Tenth Circuit also recognized the aforesaid narrow exception to ERISA preemption in *Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc.*, 944 F.2d 752, 756 (10th Cir. 1991). In *Hospice,* the infant son of an employee with Blue Cross group health care benefits was admitted to Hospice's healthcare facility ("HC facility") to receive around-the-clock care following a surgery. The HC facility contacted Blue Cross about insurance coverage, prior to admitting the infant, and was informed that coverage was available. The HC

4

facility repeatedly contacted Blue Cross throughout the child's care and was assured that care was covered. However, following the infant's discharge, Blue Cross denied coverage. The HC facility sued in state court alleging promissory estoppel, quantum merit, and claims as a third-party beneficiary. Blue Cross removed the action to federal court, and the district court denied a motion for remand holding that the HC facility's first two claims were preempted under ERISA. The court found Hospice's reference in the complaint to the ERISA plan did not 'relate to' the plan, stating that Blue Cross's denial of payment to Hospice was a consequence of its denial of coverage to the employee. The court determined that the HC provider's claims did not relate to rights under the plan where there was no claim against the plan contract. Finally, the court determined that simply because damages would be based upon the amount of potential plan benefits, that did not implicate the administration of the plan, and was not consequential enough to connect the action with, or relate the action to, the plan. *Id.* at 755. In reversing the district court, the court remanded the case, finding that:

> An action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan.

*Id.*

As was the case in *Hospice*, Northern in this case does not claim any rights under the plan and instead is requesting independent damages as a third-party. BC has attempted to distinguish *Hospice* based on the idea that the benefits in *Hospice* were never covered under the plan, whereas in this case, some benefits were actually paid to Northern. In support of this distinction, BC has cited to *Via Christi Regional Medical Center v. Blue Cross and Blue Shield*

5

*of Kansas*, 361 F.Supp.2d 1280 (D. Kansas 2005).[1] In *Via Christi*, a beneficiary of a qualifying ERISA plan assigned his rights to Via Christi, a third-party healthcare provider. Although at the onset of treatment the plan was self insured and had a stop loss policy with the defendant, it subsequently switched to a fully insured plan without the stop loss policy. Because of the excessive medical costs incurred by the beneficiary, the newly formed fully insured plan was unable to pay the medical claims. Subsequently, the plaintiff hospital brought a common-law claim of promissory estoppel based on Blue Cross's representation that the beneficiaries' medical expenses would be covered under the plan. The district court held that ERISA did preempt the claim. The court distinguished *Hospice* from *Via Christi* by focusing on the "party's eligibility status" under the plan, noting that the "essential factual difference" was that the insured in Via Christi was an eligible beneficiary under the plan and Blue Cross had in fact already paid part of Haskins claims under the plan.

Upon a careful reading of *Hospice*, it appears that *Via Christi*, as well as BC in this case have misread *Hospice*. The family in *Hospice* did initially have benefit coverage for their infant, and it was only later that they were told coverage had been denied based on a pre-existing condition. Regardless, this factual distinction would not change the clear legal conclusion outlined in *Hospice* and we therefore decline to follow *Via Christi* on this point.

---

[1] In responding to Northern's motion to remand, BC went to great lengths to identify a number of cases where state common law claims of negligent misrepresentation, promissory estoppel and breach of contract were preempted by ERISA. *See* Defendant's Opp. Memo., p. 9-11. We note that, unlike Northern, these cases were all brought by a plan beneficiary or his assignee (a principal ERISA entity) against another principal ERISA entity in an attempt to circumvent ERISA's remedial provisions.

Northern's claims do not depend on, nor are they derived from McBride's rights to recover under the plan, but instead devolve from BC's alleged misrepresentations. Northern's breach of contract claim does not implicate the ERISA contract, but is instead based on an alleged oral contract created between BC and Northern during telephone conversations where coverage was discussed. Furthermore, there has not been a Tenth Circuit case since *Hospice* that has altered the decision or analysis of the *Hospice* case. *See Monarch Cement Co. v. Lone Star Industries, Inc.*, 982 F.2d 1448, 1454 (10th Cir.1992) (adopting *Hospice* analysis and determining that issue of interpreting Sale Agreement between two employers and apportioning pension liabilities between those companies not preempted by ERISA.).

Accordingly, under the language and holding of *Hospice*, Northern does not qualify as an ERISA plan participant, and the Motion to Remand should be granted.

II. **REGARDLESS OF ANY ASSIGNMENT OF BENEFITS BY MCBRIDE, NORTHERN HAS ASSERTED CIVIL DAMAGES AS AN INDEPENDENT THIRD PARTY AND THEREFORE ERISA DOES NOT PREEMPT THE CLAIMS.**

Because Northern requested the payment of medical bills as an assignee of McBride, the Defendant claims that ERISA preempts Northern's claims, notwithstanding the *Hospice* decision. The Defendant argues that Northern's claims 'relate to' ERISA because, before filing the civil suit, Northern submitted medical bills as an assignee of the patient and received payment. *See* Def. Opp. Memo, p. 10. Plaintiff concedes that Mr. McBride assigned his rights to benefits and that Northern exercised these rights under the Plan. However, Northern can still assert state law claims, independent of their assignment status, in Northern's separate capacity as a third-party health care provider, which is exactly what they did in this case. BC has

7

not cited to any Tenth Circuit case holding that assignment by a plan participant to a third-party health care provider preempts state claims by the third-party. The only case BC has cited to dealing with whether third-party health care providers have standing to sue in federal court for ERISA benefits based on their status as an assignee is *Via Christi*, 361 F.Supp at 1286.

Plaintiff emphasizes a Ninth Circuit case that we find instructive. In *The Meadows v. Employers Health Insurance*, 47 F.3d 1006, 1008 (Ninth Cir. 1995), the court allowed a third-party health care provider, who was also an assignee, to bring state law claims independent of its rights as an assignee. Also, in *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994) plaintiff, a health care provider, was permitted to simultaneously assert both ERISA claims as an assignee and state law claims as an independent third-party provider. No case has been brought to the attention of this Court holding that a health care provider loses its ability to sue for damages in state court when they also request medical bill payment under an employee benefit plan. In the case at bar, the fact that plaintiff submitted medical bills as an assignee does not govern or relate to the preemption analysis. Plaintiff's submission of medical bills as an assignee was a necessary and routine process that would naturally be expected to occur when a health care provider seeks compensation for medical care rendered to a patient.

In any event, the claims at issue are based on alleged misrepresentations made by the defendant to the plaintiff. Plaintiff is suing for damages that resulted from those misrepresentations and not as an assignee for recovery of plan benefits. Even if plaintiff's damages would be calculated in part by the medical bills it submitted as an assignee, any

8

implication of or relation to an ERISA plan is purely incidental. *See Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Texas*, the Fifth Circuit 164 F.3d 952, 955 (5th Cir. 1999) (holding that a third-party healthcare provider was permitted to bring state common law claims against an ERISA plan despite the receipt of partial payment under the plan). In short, the sort of routine assignment that occurred in the case at bar does not remove plaintiff's ability to sue for damages in its capacity as a third-party provider. Moreover, even if plaintiff were requesting civil damages as an assignee *and* as a third-party health care provider, as in *Lordmann Enterprises*, the state claims would still not be preempted by ERISA. Accordingly, this Court rules that plaintiff in this case may properly assert claims in its independent capacity as a third-party health care provider, notwithstanding the fact that an assignment of benefits had occurred.

Based upon the foregoing, Plaintiff's Motion to Remand to State Court is GRANTED.

IT IS SO ORDERED.

DATED this 5th day of Sept, 2006.

_____
J. THOMAS GREENE
U.S. District Court Judge